**IN RE Robert ERSKINE, Debtor.**

**Case No. 15–28841–L**

United States Bankruptcy Court,
W.D. Tennessee, Western Division.

Signed April 08, 2016

Filed April 11, 2016

Paul Forrest Craig, Daniel Lofton, Craig & Lofton, P.C., Memphis, TN, for Debtor.

## ORDER GRANTING TRUSTEE'S MOTION TO COMPEL TURNOVER

Jennie D. Latta, UNITED STATES BANKRUPTCY JUDGE

BEFORE THE COURT is the motion of Bettye S. Bedwell, Chapter 7 Trustee (the "Trustee"), seeking an order compelling the turnover of property of the estate. At issue are four deposit accounts maintained by the Debtor and/or Elite Contracting Management at Regions Bank. The Debtor consents to the release of two of the accounts, which he treats as personal accounts, but resists the turnover of the other two accounts, which he maintains are the accounts of Elite Contracting Management, LLC, owned by The Robert Massey Erskine, Sr. Irrevocable Living Trust. For the following reasons, the motion will be granted.

### JURISDICTION

Original and exclusive jurisdiction of all bankruptcy cases lies with the district court. 28 U.S.C. § 1334(a). The motion seeks turnover of property of the estate,

which involves a determination of whether certain deposit accounts are property of the estate. These are core bankruptcy functions which arise under the Bankruptcy Code. *See* 11 U.S.C. §§ 541(a) and 542; 28 U.S.C. § 157(b)(1)(E). Pursuant to authority granted to the district courts at 28 U.S.C. § 157(a), the district court for the Western District of Tennessee has referred to the bankruptcy judges of this district all cases arising under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11. *In re Jurisdiction and Proceedings Under the Bankruptcy Amendments Act of 1984,* Misc. No. 81–30 (W.D.Tenn. July 10, 1984). The underlying bankruptcy case was referred to this bankruptcy court pursuant to the general order of the district court. Authority to hear and finally determine this contested matter lies with this bankruptcy court.

## ISSUES PRESENTED

In her brief, the Trustee identifies three issues raised by the motion and objection:

1. Whether the Trust is a valid and enforceable Tennessee Asset Protection Trust ("TAPT") such that its assets are excluded from the bankruptcy estate by 11 U.S.C. § 541(c)(2).

2. Whether the administrative dissolution of Elite Contracting Management, LLC ("Elite LLC or "LLC") in 2012 affects the outcome of this contested matter.

3. Whether the Debtor made transfers to the Trust with the actual intent to hinder, delay, or defraud creditors.

## BACKGROUND FACTS

The following facts are not in dispute:

1. The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 17, 2015.

2. Bettye S. Bedwell was appointed Trustee in Bankruptcy on September 17, 2015.

3. The Debtor maintains two bank accounts at Regions Bank: (1) Account No. xxxxxx8153, which had a balance of $22,256.44 on September 22, 2015; (2) Account No. xxxxxx1487, which had a balance of $221.02 on September 22, 2015. These accounts are referred to by the parties as the "Personal Accounts."

4. In addition, two other accounts are maintained at Regions Bank: (3) Account No. xxxxxx6778, which had a balance of $7,835.53 on September 22, 2015; (4) Account No. xxxxxx2746, which had a balance of $26,566.55 on September 22, 2015. These accounts are referred to by the parties as the "Business Accounts."

5. The account holder for the Business Accounts is identified as "Elite Contracting Management/Robert Erskine."

6. The Debtor asserts that Elite LLC is owned by The Robert Massey Erskine, Sr. Irrevocable Living Trust (the "Trust"). A copy of the Trust agreement dated February 25, 2011 (the "Trust Agreement") was provided by the Trustee as Exhibit 1 to her brief.

7. The Debtor asserts that he was the grantor of the Trust. A copy of the Articles of Organization and Operating Agreement of Elite Contracting Management, LLC dated March 1, 2011, was provided by the Trustee as Exhibit 2 to her brief.

8. The Debtor asserts that the Trust "is listed as the owner of Elite LLC as of February, 2011." Debtor's Objection to Motion to Compel [Dkt.No. 33]. Although the LLC was not formed until after February 2011, the Operating Agreement does identify the initial member as the Trust.

9. The Debtor admits that he is the trustee of the Trust, but asserts that he is

not a beneficiary. Rather, he asserts that his four children are the beneficiaries of the Trust. The Trust Agreement names the Debtor's four living children and states: "All references to my beneficiaries are to these, and as such shall be the sole beneficiaries of my living trust." Debtor's Brief in Opposition [Dkt. No. 67]; Trustee's Brief in Support [Dkt. No. 55].

10. Elite LLC was administratively dissolved by the Tennessee Secretary of State on August 9, 2012, and its status was revoked on December 15, 2014. The Trustee has provided a screen shot from the Tennessee Secretary of State website which shows the status of the LLC as "Inactive—Revoked (Revenue)" as of August 9, 2012. Trustee's Brief in Support, Exh. 3 [Dkt. No. 55].

11. The Debtor asserts that the Business Accounts consist of an operating account and a payroll account. He asserts that the operating account is designated for the payments of supplies and services to vendors of Elite LLC. He asserts that the payroll account is designated for payment of payroll taxes which are owed for state and local taxes.

12. The Trustee filed her Motion to Compel Turnover of Property of the Estate on October 30, 2015. A hearing was scheduled for November 19, 2015, but was continued at the request of the Debtor to December 3, 2015. The Debtor filed an objection to the motion on December 2, 2015. The hearing was continued to December 17, 2015.

13. At the hearing on December 17, 2015, the court heard statements of counsel, who asked leave to file briefs concerning legal issues. A briefing schedule was established and later modified. Briefing was completed by the filing of the Trustee's reply brief on March 11, 2016.

## ANALYSIS

Pursuant to the agreement of the parties, the court will treat the motion to compel as a motion for summary judgment for purposes of deciding relevant legal issues. In some instances the court will presume that the facts are as presented by the Debtor in order to determine whether the Business Accounts represent property of the bankruptcy estate. The Debtor has conceded that the Personal Accounts do represent property of the estate. Those will not be dealt with here.

### A. The Trust Does Not Exclude Business Accounts from the Estate

The commencement of a bankruptcy case creates an estate consisting of all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Because "[p]roperty interests are created and defined by state law ... [u]nless some federal interest requires a different result, ... interests should be analyzed" pursuant to state law. *In re Butner*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In general, restrictions on transfer of an interest in property by the debtor to not prevent that interest from becoming property of the bankruptcy estate. 11 U.S.C. § 541(c)(1). The one exception is "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2). These restrictions prevent such beneficial interests from becoming property of the estate. Property in which the debtor holds only legal title but not an equitable interest becomes property of the estate but only to the extent of the debtor's legal title. 11 U.S.C. § 541(d).

The Debtor argues that the Business Accounts are excluded from his bankruptcy estate because the Trust is a valid

and enforceable Tennessee Asset Protection Trust ("TAPT"). To qualify as a TAPT, a trust must satisfy certain requirements. Among these, the trust must:

1. be governed by Tennessee law;
2. be irrevocable;
3. have a spendthrift clause;
4. appoint a qualified trustee;
5. be accompanied by an affidavit (a "Qualified Affidavit") that states:
    a. the transferor has the full right, title and authority to transfer assets to the trust;
    b. the transfer of the assets to the trust will not render the transferor insolvent;
    c. the transferor does not intend to defraud a creditor by transferring assets to the trust;
    d. the transferor does not have pending or threatened court actions against transferor, except for those court actions specifically identified by the transferor on an attachment to the affidavit;
    e. the transferor does not contemplate filing for relief under the federal bankruptcy code; and
    f. the assets being transferred to the trust were not derived from unlawful activities.

Tenn. Code Ann. §§ 35–16–102(7)(A)–(C); 35–16–102(12)(A)–(C); and 35–16–103(*l*)–(7).

As an initial matter, the only interest that is excluded from property of the estate by section 541(c)(2) is the beneficial interest of a debtor in a trust. According to the Debtor, he does not hold a beneficial interest in the Trust. The Trust Agreement identifies the Debtor's children as the "sole beneficiaries" of the Trust. This, without more, would take the Trust outside of the section 541(c)(2) exclusion. It is apparent, however, that the Debtor *does* enjoy a present beneficial interest in the Trust. For example, the Trust Agreement provides: "During my life, I shall have the express and total power to control and direct payments, add or remove trust property, and amend or revoke this trust." Art. 4, § 1. See also: Art. 4, § 1.a.: "Absent directions from me, my Trustee shall distribute the trust income to me at least monthly."; Art. 4, § 1.c.: "I shall have the absolute right to add to the trust property at any time and the absolute right to remove property, or any interest therein, from the trust at any time"; and Art. 4, § 1.d.: "I shall have the absolute right to amend or revoke my trust, in whole or in part, at any time.... This right to amend or revoke my trust is personal to me, and may not be exercised by any legal representative or agent acting on my behalf." It does appear that the Debtor holds a beneficial interest in the Trust during his lifetime.

The Trust does not qualify as a TAPT, however. With respect to each of the referenced requirements, the Trust Agreement provides as follows:

1. Be governed by Tennessee law. The Trust Agreement does provide that "[t]he validity of this trust shall be determined by reference to the laws of the State of Tennessee." Art. 13, § 7.e.

2. Be irrevocable. The Trust Agreement clearly provides that it is revocable during the lifetime of the Trustmaker. Art. 4, § 1.d.

3. Have a spendthrift clause. The Trust Agreement provides: "To the fullest extent permitted by law, the interest of all beneficiaries in the various trusts and trust property subject to this agreement, *except for my interest therein while I am living*, shall not be alienated, pledged,

anticipated, assigned or encumbered unless specifically authorized by the terms of this agreement. Such interest, while they remain trust property, shall not be subject to legal process or to the claims of any creditors." Art. 13, § 2 (emphasis added). The Trust Agreement clearly does not protect the interest of the Trustmaker during his lifetime from the claims of his creditors. Although the Trust Agreement has a spendthrift clause, it protects only the beneficiaries of the "Family Trust" that will come into being upon the death of the Trustmaker. Art. 8, § 1.

4. Appoint a qualified trustee. Under Tennessee law, a "qualified trustee" means "a person who ... is not the transferor." Tenn. Code Ann. § 35–16–102(12)(C). In addition, Tennessee law provides: "for purposes of this chapter, neither the transferor nor any other person who is a nonresident of this state ... shall be considered a qualified trustee...." Tenn. Code Ann. § 35–16–108(a). The Debtor admits that he is the trustee of the Trust. As the Trustmaker/transferor, he is not a qualified trustee.

5. Be accompanied by an affidavit (a "Qualified Affidavit"). The Trust Agreement is not accompanied by the required affidavit. The Debtor admits that the required affidavit does not exist, but suggests that it could be supplied. As the Trustee points out, however, the Debtor could not now make the required affirmations, including the statement that "transferor does not contemplate filing for relief under the federal bankruptcy code." The Debtor has already sought relief under the Bankruptcy Code.

Although the Trust Agreement satisfies the requirement that it be governed by Tennessee law, it satisfies none of the remaining requirements for a valid TAPT, at least with respect to the present lifetime trust. As a result, there is no exclusion under the Bankruptcy Code to prevent the present legal and beneficial interests of the Debtor from becoming property of his bankruptcy estate.

■ The Debtor argues that his right during his lifetime to control and direct payments, and his right to "amend or revoke this trust," do not render the Trust revocable under Tennessee Code Annotated § 35–16–111(1) and (7). Those sections provide:

An investment services trust shall not be deemed revocable on account of its inclusion of one (1) or more of the following:

(1) A transferor's power to veto a distribution from the trust; ...

(7) The transferor's right to remove a trustee or advisor and to appoint a new trustee or advisor; provided, however, that the right shall not include the appointment of a person who is a related or subordinate party with respect to the transferor within the meaning of § 672(c) of the Internal Revenue Code of 1986 (26 U.S.C. § 672(c)), and any successor provision.

Tenn.Code Ann. § 35–16–111(1)(7). Neither of the sections pointed to by the Debtor include the right to revoke the trust. The Trustee has pointed to two instances in the Trust Agreement in which the Trustmaker is permitted to amend or revoke the Trust (Trust Agreement, Art. 4, § 1; Trust Agreement, Art. 4, § 1.d.), and two additional instances in which the Trust is described as a "revocable living trust" (Trust Agreement, final page). It is tauto-

logical: the power to revoke a trust renders it revocable.

The Debtor also points to the Trustee's argument that the Trust should be deemed revocable because it includes the provision: " I shall have the absolute right to add to the trust property at any time and the absolute right to remove property, or any interest therein, from the trust at any time." Trust Agreement, Art. 4, § 1.c. The Debtor says that these actions are allowed by section 35–16–111(3), (5), and (6) of the Tennessee Investment Services Act. Those sections provide:

> An investment services trust shall not be deemed revocable on account of its inclusion of one (1) or more of the following: ...
>
> (3) The transferor's potential or actual receipt of income, including rights to the income retained in the trust;
>
> ...
>
> (5) The transferor's receipt each year of an amount specified in the trust, the amount not to exceed five percent (5%) of the initial value of the trust or its value determined from time to time pursuant to the trust;
>
> (6) The transferor's potential or actual receipt or use of principal if the potential or actual receipt or use of principal would be the result of a qualified trustee's or qualified trustees' acting.

Tenn. Code Ann. § 35–16–111(3)(5)(6).

The rights granted to the Trustmaker in the Trust Agreement go far beyond the rights granted in the Tennessee Investment Services Act. The Trustmaker's absolute right to remove property, or any interest therein, from the trust at any time, goes beyond the right to receive income and beyond the right to receive principal not in excess of 5%. It also is inconsistent with the requirement that distributions of principal beyond 5% be the result of the action of a qualified trustee. As discussed previously, the Debtor, as Trustmaker/transferor, is not a qualified trustee.

With respect to the required spendthrift provision, the Debtor argues that the Protective Clause of the Trust Agreement (Art. 13, § 2) is enforceable in bankruptcy because "the Debtor does not have any interest under this Trust." Debtor's Objection to Motion to Compel [Dkt. No. 33]. Although it is true that the Debtor is not named a "beneficiary" under the Trust Agreement, it is clear that he enjoys a beneficial interest during his lifetime. For example, as stated previously, he has the absolute right to add or remove property from the trust at any time. Trust Agreement, Art. 4, § 1.c. In addition, during any period of disability, the trustee is directed to "provide [to the Trustmaker] as much of the principal and net income of my trust as is necessary or advisable, in its sole and absolute discretion, for my health, support, maintenance, and general welfare." Trust Agreement, Art. 4, § 3.a. The Debtor, as Trustmaker, has a present interest in the Trust which is described in the Protective Clause as "my interest therein while I am living." Trust Agreement, Art. 13, § 2. That clause excludes the Trustmaker's present interest from its anti-alienation provision. As a result, that interest, which includes the absolute right to remove property from the Trust, is not excluded from the Debtor's bankruptcy estate.

■ The Debtor concedes that the Trust does not have a qualified trustee, but argues that the right of the transferor to appoint himself as an "investment advisor," who may act as trust "protector" who holds one or more trust powers renders him a qualified trustee. See Tenn. Code Ann. § 35–16–109. The Tennessee Investment Services Act defines an "investment

services trust" as "an instrument appointing a qualified trustee or qualified trustees for the property that is the subject of a disposition, which instrument [satisfies] three additional criteria." Tenn. Code Ann. § 35–16–102(7). One of these is the stipulation that the transferor cannot be a qualified trustee. Tenn. Code Ann. § 35–16–108. The ability of the transferor to appoint himself investment advisor does not obviate the need for a qualified trustee, for section 35–16–108(b) provides that an " 'advisor' includes a trust 'protector' or any other person who, *in addition to a qualified trustee,* holds one or more trust powers." (emphasis added). The lack of a qualified trustee, along with other defects, renders the Trust not an "investment services trust" for purposes of Tennessee law. As a result, there is no "applicable nonbankruptcy law" that restricts the transfer of the Debtor's present beneficial interest in the Trust, and thus excludes that interest from the bankruptcy estate. *See* 11 U.S.C. § 541(c)(2).

The Debtor argues that the lack of a qualified affidavit is not fatal to his position. The Debtor's argument is puzzling. He says that the Trust Agreement only requires an initial funding of $10. Because this amount is minimal, he says that the required affidavit could be supplied now. If the Trust holds only $10 and does not hold the membership interest in Elite LLC, then there is nothing to talk about. If the Trust does hold the membership interest, but the qualified affidavit was not supplied prior to the transfer of funds necessary to obtain the membership interest to it, then the transfer of those funds is not a "qualified disposition." Tenn. Code Ann. § 35–16–102(11). If there has been no qualified disposition of the funds to the Trust, then there is no restriction on actions to enforce creditor claims against those funds or the membership interest acquired with them. Tenn. Code Ann.

§ 35–16–104(a). If there is no restriction or enforcement of creditor claims under nonbankruptcy law, then there is no exclusion of the beneficial interest in the Trust from the bankruptcy estate. *See* 11 U.S.C. § 541(c)(2).

## B. The Dissolution of Elite LLC does not Exclude Business Accounts from the Estate

The second issue raised in the parties' briefs is whether the administrative dissolution of Elite LLC in 2012 affects the outcome of this contested matter. The Trustee asserts that the dissolution of the LLC renders the assets of the LLC assets of the Debtor either because the Business Accounts represent assets of the LLC that existed at the time the LLC was dissolved, and thus devolved to the Debtor or the Trust as the sole member of the LLC, or because the Business Accounts represent assets that came into existence while the Debtor was operating the business as a proprietorship. The Debtor has not responded to this argument.

As a general rule, the assets and liabilities of a limited liability company are separate from the assets and liabilities of its members. When a limited liability company or corporation is administratively dissolved, it is prohibited from carrying on any business other than that necessary to wind up its affairs, and the assets of the company pass to its members. Tenn. Code Ann. § 48–24–202(c). *See, T.O.T.S. v. Whirlpool Corp.,* 2009 Tenn.App. LEXIS 857 (Nov. 17, 2009); *KHB Holdings, Inc. v. Duncan,* 2003 WL 21488268 at *2 (Tenn.Ct.App. Jun 25, 2003); *Jesse A. Bland v. Knox Concrete Products, Inc.,* 207 Tenn. 206, 338 S.W.2d 605, 607–08 (1960). Any assets belonging to the LLC at its dissolution on August 9, 2012, devolved upon its member, the Trust. As we have seen, the assets of the Trust repre-

sent property of the Debtor's bankruptcy estate as the result of his present beneficial interest.

The Debtor continued to carry on business after the administrative dissolution of the LLC. As the Trustee points out, this conclusion is supported by the Debtor's bankruptcy papers filed in a previous case, number 14–24293. He describes himself as "self-employed," he lists an "office phone" contract and "company cell phone" contract as executory contracts, and he lists gross business income of $476,665 for the twelve months preceding the filing of that petition on May 26, 2014. *See* Trustee's Brief in Support, Exh. 6, 7, and 8 [Dkt. No. 55]. These exhibits show that the Debtor has operated his business as a proprietorship since at least May 26, 2013. It is more likely than not that funds in the Business Accounts were deposited after that date, and for that reason, represent property of the Debtor and thus, property of the bankruptcy estate.

The Debtor argues that the Business Accounts represent funds earmarked (although he does not use that term) for payment of the business obligations and payroll tax obligations of the company. The Debtor references sections 541(b)(1) of the Bankruptcy Code, which excludes from the estate "any power that the debtor may exercise solely for the benefit of an entity other than the debtor," and 541(b)(7), which excludes any amount withheld from wages of employees as contributions to various employee benefit plans. The difficulty with these arguments is that the Debtor has produced no evidence tending to support the application of those sections. He has made no reference to a "power" that he may exercise solely for the benefit of another or to an employee benefit plan. Those exclusions simply do not apply to the facts of this case.

Because the business was operated by the Debtor as a proprietorship from the administrative dissolution of the LLC in 2012, the Business Accounts are assets of the Debtor's bankruptcy estate, and the creditors of the business have claims against that bankruptcy estate.

## C. It Is Unnecessary to Determine Whether the Debtor Made Transfers to the Trust with the Actual Intent to Hinder, Delay, or Defraud Creditors

As an alternative theory of recovery, the Trustee points to section 548(e) of the Bankruptcy Code, which provides:

(e)(1) In addition to any transfer that the trustee may otherwise avoid, the trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if—

(A) such transfer was made to a self-settled trust or similar device;

(B) such transfer was by the debtor;

(C) the debtor is a beneficiary of such trust or similar device; and

(D) the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

11 U.S.C. § 548(e).

The Trustee asserts that the transfer of the membership interest in Elite LLC to the Trust may be avoided pursuant to this section. The Articles of Organization for the LLC are dated March 1, 2011. The name of the organizer is the Trust and the initial member is also identified as the Trust. Trustee's Brief in Support, Exh. 2 [Dkt. No. 55]. The Trust Agreement is dated February 25, 2011. Trustee's Brief in Support, Exh. 1 [Dkt. No.55]. The Debtor indicates that the Trust received a tax

identification number for the future LLC. Debtor's Brief in Opposition [Dkt. No. 67].[1] There does not appear to have been a transfer of the membership interest to the Trust. The Trustee has provided no proof putting the question of the identity of the organizer of the Trust at issue, so the court will accept the Debtor's statements as true for purposes of this discussion. The Operating Agreement does reflect that the initial contribution of the Trust to the LLC was to be $10,000. Trustee's Brief in Support, Exh. 2 [Dkt. 55]. The record does not reflect how or when the Trust obtained $10,000, and whether this amount was transferred to the LLC.

If there was a potentially fraudulent transfer, it could have been the transfer of funds to the Trust by the Debtor to enable the Trust to acquire its interest in the LLC. If there was a transfer of funds by the Debtor after the formation of the Trust on February 25, 2011, it would meet some of the criteria of section 548(c). It would have been a transfer of an interest of the Debtor in property made within 10 years of the filing of the petition that was (A) made to a self-settled trust (for the reasons stated in Section A above); (B) by the Debtor (this is assumed for purposes of this analysis); and (C) the Debtor was a beneficiary of the Trust (for reasons stated in Section A above).

Assuming that the Debtor did transfer funds to the Trust to enable the Trust to make the initial contribution to the LLC, the remaining issue is whether that transfer was made with actual intent to hinder, delay, or defraud a creditor. In support of the argument that the transfer was made with actual intent to hinder, delay or defraud a creditor, the Trustee states that:

1. At the time of the creation of the Trust, the Debtor had already filed two previous bankruptcy cases in Mississippi.

2. The Mississippi State Tax Commission was seeking to collect unpaid taxes from the Debtor.

3. The Mississippi State Tax Commission filed two tax liens totaling in excess of $200,000 against the Debtor for unpaid taxes shortly before the transfers.

4. The Debtor had a judgment in the amount of $106,000 taken against him in a suit for replevin in November 2010, three months before the creation of the Trust.

In support of these statements, the Trustee offers a copy of a Notice of Tax Lien from the Mississippi Department of Revenue, showing a tax lien enrolled June 16, 2011 (*after* the formation of the Trust), in the amount of $173,080.06, for taxes related to the tax period ending December 31, 2015. Trustee's Brief in Support, Exh. 4 [Dkt. No. 55]. This tax lien was entered *after* the creation of the Trust, but it is related to a large debt for unpaid taxes assessed *before* the creation of the Trust.

The Debtor responds by setting out the following facts taken from an objection to the Mississippi Department of Revenue's claim filed in his previous bankruptcy case:

3) On or about January 20, 2015, the Creditor filed an amended proof of claim concerning the Mississippi Department of Revenue in the amount of $320,082.79.

4) The Creditor did provide the Debtor documentation relating to this alleged claim. Contained in this documentation was an assessment to C & R Construction, LLC which contained a Certified Mail, Return Re-

---

1. The Debtor's Brief states that a copy of a letter from the Internal Revenue Service re- flecting the issuance of the TIN is attached as an exhibit, but no exhibit is attached.

ceipt executed by the ex-wife, Jamie Erskine, of the Debtor on August 29, 2007. This documentation also contained an assessment for sales tax for C & R Construction, LLC which contained a Certified Mail, Return Receipt executed by the ex-wife, Jamie Erskine, of the Debtor dated March 7, 2008.

5) The Debtor was divorced from his ex-wife on or about July, 2008. Prior to the divorce, the Debtor had separated from his wife on or about July, 2007. The Debtor did not live in the marital residence from July, 2007.

6) As part of the terms of the divorce, Jamie Erskine lived in the property known as 13569 Fox Bend Lane, Olive Branch, MS 38654 from July, 2007 through July, 2013.

7) The Debtor retook possession of the property known as 13569 Fox Bend Lane, Olive Branch, MS 38654 in July, 2013.

8) While Jamie Erskine was in possession of the property known as 13569 Fox Bend Lane, Olive Branch, MS 38654, the Debtor never received mail from this address.

9) C & R Construction, LLC was dissolved on July 1, 2007.

10) The Debtor was never informed [of] the basis of the tax assessments that are the subject of the Proofs of Claim. The Debtor was only provided with a total amount owed.

11) Based upon the Debtor's knowledge, these tax assessments exceed that amount of work that the Debtor's company performed in the State of Mississippi. During this applicable period of time, the Debtor's company only performed three projects in the State of Mississippi. The jobs that were performed were ones in which the sales tax had already been paid as these jobs contained a Material Purchase Certificate. As such, the Debtor contends that he does not owe any tax to the State of Mississippi.

Debtor's Brief in Opposition [Dkt. No. 67]. The Debtor then states that his prior bankruptcy cases were Chapter 13 cases in which he tried to repay his outstanding obligations, but the "exorbitant" claim of the Mississippi Department of Revenue rendered them not feasible. *Id.*

The Debtor agrees with the Trustee that he had filed prior bankruptcy cases. The petition which commenced the pending bankruptcy case in Tennessee discloses five prior bankruptcy cases, two of which were filed in Mississippi, one in 2007, and the other in 2008. Petition [Dkt. No. 1]. There is no dispute about those facts. The Debtor's Schedules list no obligation owed to the Mississippi Department of Revenue nor do they list any obligation in the amount of $106,000 resulting from a judgment. They do list a debt owed to Trustmark in the amount of $147,270, but do not provide the date on which that debt was incurred.[2]

It is clear that the Debtor disputes the Mississippi tax obligation. He asserts that he did not become aware of the obligation until sometime after the Trust was created. This raises an issue of fact concerning whether or not the Debtor had the requisite intent to hinder, delay, or defraud a creditor when he created the Trust and made transfers to the Trust. The Debtor

---

**2.** In fact, the Debtor fails to provide the dates that any of his debts were incurred. In addition, his Statement of Financial Affairs contains no information. Each question is answered "no."

does not, however, dispute the Trustee's statement that a judgment was taken against him in November 2010, and the Debtor does not dispute the fact that he had filed two bankruptcy cases prior to the creation of the Trust. These two facts tend to indicate the presence of actual intent to defraud.

 The Trustee is correct that fraudulent intent may be inferred from circumstances. *In re Triple S Restaurants, Inc.*, 422 F.3d 405, 416 (6th Cir.2005); *Roland v. United States*, 838 F.2d 1400, 1402–03 (5th Cir.1988) ("Since direct proof of fraud often is not available, courts may rely on circumstantial evidence to establish fraudulent intent."). The Tennessee Investment Services Act incorporates the negation of some of these badges of fraud into the Qualified Affidavit required *before* a transfer is made. Among those that are particularly relevant here are the obligation to affirm that the transfer of assets will not render the transferor insolvent; to affirm that there are no pending or threatened court actions taken against the transferor; and to affirm that the transferor does not contemplate filing for relief under the federal bankruptcy code. Tenn. Code Ann. § 35–16–103. The Debtor admits that a Qualifying Affidavit was not signed prior to the transfer of property to the Trust. Based upon his own admissions arising as the result of his prior bankruptcy filings, it does not appear that he could have given truthful responses in a Qualified Affidavit prior to the creation of the Trust.

All of these issues, however, are factual matters that are best left to a full evidentiary hearing, if necessary. Actual support for the various statements of the parties in the form of affidavits or deposition testimony is incomplete. Because of the court's conclusions with respect to the first two issues raised by the parties, it does not appear that a determination of actual fraudulent intent will ever become necessary. The court declines to make a final determination as to the Debtor's fraudulent intent until it becomes necessary, if ever, and then, only after an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the court concludes that the Business Accounts are property of the bankruptcy estate of Robert Erskine. The Trustee's Motion to Compel Debtor to Turnover Property of the Estate is **GRANTED**, and the Debtor is directed to turn over the funds in those accounts to the Trustee within five days after this order becomes final.

**ORDERED.**